PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* IRENES DÍAZ, Defendant and Appellant.

No. 2587. Argued March 2, 1926.—Decided March 26, 1926.

*Carlos Brunet del Valle* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

A jury found the defendant guilty of the infamous crime against nature and the trial court sentenced him to five years in the penitentiary. He appealed from that judgment and assigned as error that the indictment did not state facts sufficient to justify the charge against the defendant because it did not contain in specific and plain language a clear statement of the acts constituting the crime and also did not aver that Anastasio Ramos, the inactive person, was a male.

[1] The indictment reads in part as follows:

"By this indictment the grand jury of the judicial district of Ponce, P. R., charges Irenes Díaz with the crime against nature, committed in the following manner: The said Irenes Díaz, on October 22, 1924, and in the district of Ponce, P. R., unlawfully and

wilfully committed with Anastasio Rosado the infamous crime against nature. . ."

This indictment was found under section 278 of the Penal Code, and it may be seen that the terms of the statute are followed in its wording. The authorities agree that an indictment so worded is sufficient.

"The term 'sodomy' has been held to be a sufficient description of the offense, and so of the 'infamous crime against nature.'" 1 Wharton's Criminal Law, p. 549.

"It is true that where an offense is defined by the statute in generic terms, without naming the particular acts constituting it, it has been held, as an exception to the general rule, that it is not sufficient to charge it in the language of the definition, but the particular acts must be stated which constitute the offense denounced. But, by reason of the vile and degrading nature of this crime, it has always been an exception to the strict rules requiring great particularity and nice certainty in criminal pleading, both at common law and where crimes are wholly statutory. It has never been the usual practice to describe the particular manner or the details of the commission of the act, and, where the offense is statutory, a statement of it in the language of the statute, or so plainly that its nature may be easily understood, is all that is required." 8 R.C.L. 335.

 Appellant's proposition that the indictment should state that the person with whom the crime was committed was a male is based by the appellant on the case of *People v. Carroll*, 1 Cal. App. 2, 81 Pac. Rep. 680.

The *Fiscal* argues that the case cited is erroneous because the crime may be committed with either a man or a woman. Although this conclusion of the *Fiscal* is correct and it is not necessary to state the sex of the person with whom the act was committed (8 R.C.L. 335–36), the *Carroll Case, supra*, has not been properly interpreted by the parties. In the information in that case the words of the statute were not followed, but a description of the acts committed by the defendant was made and the court said:

"An information that charges the defendant with the commission of a crime against nature with and upon a certain person with whom

then and there he had carnal knowledge, is fatally defective for failure to allege that said person was a male person, since the words 'carnal knowledge' refer to sexual connection." *People* v. *Carroll,* 1 Cal. App. 2, 81 Pac. Rep. 680.

That decision can have no application to an indictment that follows the wording of the statute in the sense of making it necessary to allege the sex of the other person, nor could it be held that its interpretation is erroneous in relation to the meaning given by it to certain words used in an indictment that describes the acts committed by the defendant with the other person. Hence the error assigned in relation to the form of the information is without merit.

▮ The real error which we believe to have been committed refers to an exception taken by the defendant while the medical expert was testifying. As to that point the record shows the following:

"Prosecuting attorney:—Did you see this boy on or about October 24, 1924?—A. Yes.—Q. What examination did you make on this boy?—A. I examined his anus and rectum.—Please explain to the jury the result of that examination.—A. This boy had a laceration of about one inch long about the anus extending through the sphincter into the rectum. It was a superficial wound and not deep, but he had another wound lower down starting from the anus toward the outside, and various excoriations around it. That was very painful and he moaned greatly when I was examining it.—Could those lacerations have been caused by the penis of a man?—Defense. We object to the question of our colleague. He should not have asked that question because it is highly suggestive and prejudicial to the rights of the defendant.—District Attorney: Let the court decide.—Judge: The district attorney may ask the witness to state all that has relation to this case. He can do so because the witness is an expert and may be asked questions of this nature.—Defense: We take exception.—District Attorney: Can that be caused by the penetration of the penis of a man?—A. It could have been caused by it.—Please explain, without the need of further questions, all that you saw and the conclusion you reached.—A. That had to be caused by the penetration of a foreign body, of course it was probably a penis, because if it had been something else made of wood it would have caused something more.—Defense: We move

that the statement of the expert be stricken out in the part that mentions the penis because his duty is not to mention the exact object; in this case we believe that the expert has gone beyond his duty in mentioning the word penis.—Judge: An expert can testify as to his opinion and the extent of his examination and the conclusions to which he might have arrived under his appreciation and scientific knowledge.—Defense: We take an exception."

It does not seem necessary to argue that the question put by the prosecuting attorney to the medical expert and objected and excepted to by the defense was really leading. The prosecuting attorney insisted in his question with the same protest and exception by the defense. The purpose of the question and the answer was to connect the defendant with the commission of the crime and hence the essence and importance of the question, suggesting moreover the answer desired or a simple denial or affirmation. The Law of Evidence defines what may be understood as a leading question and prohibits its use on direct examination, unless special circumstances and the interests of justice require it. Section 153 of said law says:

"A question which suggests to the witness the answer which the examining party desires is denominated a leading or suggestive question. On a direct examination, leading questions are not allowed, except in the sound discretion of the court, under special circumstances, making it appear that the interests of justice require it."

The question now is whether the interrogation is included in some of the exceptions admitted by the authorities, and from their study it is concluded that we are not considering an exceptional case. It is a case of an expert presumed to be an able and intelligent person, and there is no showing of the necessity or justification for asking a leading question which by its nature in relation to the crime could excite natural repugnance in the minds of the jurors and create prejudice against the accused. Because of the vile and degrading nature of the crime it is human to think that a convic-

tion might follow the mere conclusion presented to the jury in an irregular way, and the facts sought to be drawn from the witness were not such that could not have been revealed by a skillful and adequate interrogation.

In the case of *Turney* v. *State*, 47 Am. Dec. 74, the definition of leading questions on a direct examination, as well as the extent of the discretion of the court on that point in criminal matters, is so broadly and illustratively analyzed that, as the best statement of the law, its rules are entirely applicable. Among other things, the court expresses itself as follows:

"It is often extremely difficult to distinguish such questions as should not be allowed because of their leading tendency, from those which, though in form leading, in effect only draw the mind of the witness to the subject of inquiry. But while it is impossible to lay down any fixed rule which will serve in all cases, there are yet certain established rules upon the subject of leading questions, which afford a good test by which to discriminate in cases not very doubtful. For instance, that is a leading question which suggests to the witness the answer desired: 1 Stark. on Ev. 124; 2 Ph. on Ev. 722; *The People* v. *Mather*, 4 Wend. 249 (21 Am. Dec. 122). And that is also a leading question which assumes a fact to be proved which is not proved. A question is also leading, which, embodying a material fact, admits of an answer by a simple negative or affirmative. The latter constitutes an argumentative or pregnant cause of interrogation, which the law holds objectionable: 1 Greenl. on Ev., sec. 434.

"On the other hand, however, there are exceptions to the rule which forbids leading questions to be put to a witness in his examination in chief; as, when he is manifestly reluctant and hostile to the interest of the party calling him, or when he has exhausted his memory, without stating the particular required, where it is a proper name, or other fact, which can not be arrived at by a general inquiry, or when the witness is a child of tender years, whose attention can not be otherwise called to the subject-matter: *Moody* v. *Rowell*, 17 Pick. 498 (28 Am. Dec. 317). It is also to be observed upon this subject, that much discretion is confided to a court in regulating and controlling the examination of witnesses, which is to be governed by the circumstances of each case; and that some courts have gone so far as to hold that the subject, under what circumstances a leading question may be put, is a matter resting in the sound discretion of

the court presiding over the examination, and is not a matter upon which to base a motion for a new trial, or which can be assigned for error: Greenl. Ev., sec. 435; *Moody* v. *Rowell*, 17 Pick. 498 (28 Am. Dec. 317). . .

\* \* \* \* \* \* \*

"But, while the principle of law fortunately is fixed that, it being often necessary, it is therefore admissible to bring the mind of a witness into contact with the subject of inquiry, especially when a witness is examined as to any conversation or admission, still it is also a principle of law equally fixed, and beyond the control of the indignation of public justice, that, in such questions, the witness should not be prompted to give a particular answer, or be asked any questions to which the answer 'yes' or 'no' would be conclusive: 1 Stark. Ev. 124; *Nicholls* v. *Dowding*, 1 Stark. 81; opinion of Lord Ellenborough. It is undoubtedly more convenient to ask a witness whether such a thing was said or done; and questions so framed might in many cases be asked without danger of perjury, even involuntary, and we do not deny that such was the result in the very case under consideration; and there are also instances when such leading questions are proper, as have been before alluded to; but in ordinary cases, it is certainly most consistent with fairness and justice both to the witness and the defendant, to ask the witness what was done and what was said, rather than whether a particular and material thing was done and said. We are compelled therefore to the conclusion that the questions, propounded to Mary Folkes, and which have been examined, conform to the legal definition of leading questions.

\* \* \* \* \* \* \*

"It having been determined then, that leading questions were addressed to this witness, and that they were not essential to the ends of justice in this instance, it remains solely to inquire in this connection, whether this court will undertake to interfere with the discretionary power which is admitted to subsist with the courts who preside over the examination of witnesses. It is true that it has been held in the *nisi prius* courts of England, that the rules of evidence are exactly the same in civil and in criminal cases, and that in both it is in the discretion of the judge, how far he will allow the examination in chief of a witness to be by leading questions, or, in other words, how far it shall assume the form of a cross-examination: *Regina* v. *Murphy and Douglas*, 8 Car. & P. 297. But the decisions above quoted from this country, wherein it was held that the matter of judicial discretion respecting the examination of witnesses, was

not such as upon which to base an application for a new trial, or which can be assigned for error, were made in civil and not in criminal cases. Yet in the case of *Duncan* v. *McCullough, Administrator,* 4 Serg. & R. 482, which was a civil action, the supreme court of Pennsylvania, admitting the rule that the manner of examining witnesses is a matter very much in the discretion of the court presiding upon the trial, intimate that they would entertain the question, whether that course would reverse for error on a point in which the law permits the court below to exercise their discretion, provided it appeared that there had been any abuse of discretion. In the case of *The People* v. *Mather,* 4 Wend. 247 (21 Am. Dec. 122), which was the case of an indictment for a conspiracy in the abduction of William Morgan, the court, while it also admits the doctrine that considerable discretion is left to a judge who presides at a trial to control and regulate the examination of witnesses, and that appellate courts should cautiously avoid encroaching upon the proper exercise of this discretion, yet held, that if an established rule of law has been violated, the party injured has an undoubted right to relief, and that the court would feel no reluctance to grant it. The rule thus laid down by the supreme court of New York, seems most consonant to the object of public justice, which is more the protection of the innocent than the punishment of the guilty."

In order to show that the error under discussion was not committed the *Fiscal* cites the cases of *People* v. *Brown,* 19 N. W. 172, and *People* v. *Morine,* 138 Cal. 626. The point raised in the first case was as to hypothetical questions put to a physician in the sense of whether or not, in his opinion, the facts assumed would constitute rape, and it was held that the question was improper because it referred to a legal definition that was not within the medical knowledge of the witness. "The case indicates," says the opinion of the court, "that this was not the only similar instance, and the practice of presenting such hypotheses by counsel to witnesses is worthy of strong condemnation. In most cases it asks a witness to usurp the functions of the jury, and may often lead them to disregard their own functions and accept conclusions which they should form for themselves."

From this it may be noticed that the case is rather adverse

to the *Fiscal,* for the same could be said of the facts in the present case, as the answer of the physician to the question which we have qualified as suggestive was a conclusion which the jury could have reached from the evidence or the facts arising from it.

It is further to be noticed that although the judgment was not reversed in the *Brown Case, supra,* it was because the questions objected to involved, as we have said, legal points, and the reasoning of the Supreme Court of Michigan on that point was as follows:

"In the present case the witness was called on to usurp the functions of the court and not of the jury. His opinion turned out, when given, to be correct upon the law, and we cannot reverse a judgment because the law has been rightly laid before the jury, by any one. The error was cured by the answer. But it is better that the law should be laid down solely by the legal instructor of the jury."

The *Morine Case, supra,* was a prosecution for homicide and the questions that arose referred to the qualification of witnesses as experts and not to the matter of questions of a leading nature. We see no relation between it and this case. 138 Cal. 629.

On the other hand, we find that in the case of *International & G. N. R. Co.* v. *Bibolet,* 57 S. W. 974, which upheld the rule that questions put to a physician that could be answered "yes" or "no" or would suggest the answer desired, were considered suggestive, and on the objections of the appellant the judgment below was reversed.

In conclusion, there is nothing in this case to show that the trial judge was justified in varying the general rule governing the direct examination of a witness, and he erred in allowing the question excepted to.

For the foregoing reasons the judgment appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Del Toro dissented.